## Gilbert v. Commonwealth.

November 8, 1946.

678

H. C. Kennedy, J. S. Sandusky, J. C. Baker, E. L. Morgan and J. B. Wall for appellant.

Eldon S. Dummit, Attorney General, and H. K. Spear, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE CAMMACK—Affirming.

John Gilbert was appointed an election officer for Verda Precinct No. 7 in Harlan County to serve in the local option election held March 28, 1942. The opinion in the case of Jackson v. Bolt, 292 Ky. 503, 166 S. W. 2d 831, sets forth the many frauds which were perpetrated in that election. The day before the election Gilbert was given a ballot box and a sack containing the election paraphernalia. He signed for the materials and took them to his home and placed them in his bedroom. About 6 o'clock he went to work on his job as night watchman for the Harlan Wallins Coal Corporation. He said he did not return to his home until 4 a. m. the next morning at which time he was informed by his wife that at about 11 p. m. two men unknown to Mrs. Gilbert came to their home and took the election materials. He said he ate his breakfast and slept a while and then went to the place where the election was to be held, but no one was there. He returned to his home and slept a while longer. About noon he went to the Club House in the Verda commissary and found the ballot box in the room of a deputy sheriff. He and Rank Finley took the box and paraphernalia to the county clerk's office. When the box was opened it was found that 568 ballots had been cast against local option and 19 in favor thereof. Gilbert denied any knowledge of tampering with the ballots. He and Finley were jointly indicted for fraudulently conspiring to make up a false and fraudulent poll book and to that end to fraudulently conduct the election. Gilbert was tried in Wayne County and sentenced to two years in prison.

In his original brief he insists that a peremptory instruction should have been given in his favor and the verdict was the result of passion and prejudice because the jury were told to find him guilty if they believed that he did participate in making up a fraudulent poll book for Verda Precinct No. 7. In a supplemental brief it is insisted he could not be convicted of violating KRS 124.220 because no election was actually held, and it was

error to transfer the case to Wayne County, a county not adjacent to Harlan County.

In support of the second contention in the supplemental brief it is vigorously contended that our opinion in the similar case of Cooper v. Commonwealth, 300 Ky. 770, 189 S. W. 2d 949, is wrong. Since the same objection was made to the change of venue in the Cooper case as was made in the case at bar, an examination of that opinion will show our reasons for holding as we did. Therefore, it would serve no useful purpose to discuss the matter further here, since our views on the question now are the same as they were when the Cooper opinion was prepared.

We think the first proposition discussed in the supplemental brief is also without merit because Gilbert's position is somewhat analogous to that of Osborne in the case of Osborne v. Commonwealth, 296 Ky. 587, 177 S. W. 2d 896. An examination of the opinion in that case will show that Osborne was an officer in Verda Precinct No. 7B, where no election was held. Green Turner was jointly indicted with Osborne. Turner got the ballot boxes and had them in his possession until about noon on the day of the election. They were returned to the clerk's office after the polls were closed by Osborne and his wife. No one saw either Osborne or Turner stuff the boxes, but there was proof tending to show that they had them in their possession during the day of the election. Gilbert, as did Osborne, attempted to act as an officer because he was given the boxes, had them in his possession at one time and returned them to the clerk's office. He, as we said of Osborne, was at least a de facto officer and as such was fully subject to the penalties prescribed for offenses committed by de jure officers. Furthermore, no one charged with the solemn responsibility of seeing that a fair election is held could conduct himself as did Gilbert and be heard to say that he had not violated the election laws.

The original brief is based upon the theory that there is no evidence whatever in the record tending to show that Gilbert had anything to do with tampering with the ballot boxes and fraudulently voting the ballots. We take a contrary view. Gilbert was designated as an election officer and accepted that responsibility. He got

the box and paraphernalia and took them to his home, thereby assuming the responsibility for their safe-keeping. Accepting as true his statement that he did not return to his home between 6 p. m. the day before the election and 4 a. m. the following morning, at which time he learned that the election materials had been removed, he made no effort to find them nor did he report their loss. Even though he was designated as an election officer, he did not go to the place where the election was to be held until around 8 or 9 o'clock, and upon learning that no election was being conducted he returned home and slept until about noon. He did say, however, that he reported the loss of the election materials to a deputy sheriff who left Verda about three years ago. Gilbert and Finley took the box and other materials from the officer's room in the Club House, according to the testimony of the former, and carried them to Harlan about 1 o'clock. They did not even wait until the time for the polls to close. Gilbert turned the materials over to the county clerk and receipted for them, but he made no report of what had happened. He knew that no election had been conducted and even after he got the box he did not contact the other officers and report to them what had happened or make any effort to hold an election. Even if we assume that the box stuffing was done in the deputy sheriff's room, Gilbert's own testimony put him at that place and he was bound to have known what had happened because he and Finley lost no time in taking the box and other materials to the county clerk's office.

Under the circumstances, we think there was ample evidence to warrant the submission of the case to the jury and to support their finding of guilt.

Judgment affirmed.